THE STATE OF KANSAS, *ex rel. John S. Dawson, as Attorney-general, etc., Plaintiff,* v. JAMES M. MEEK, *Defendant.*

No. 17,966.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Creation of Courts—Valid Statute.* The act (Laws 1909, ch. 112) creating in certain counties a second division of the district court, and providing for the discontinuance of the court of common pleas at a later date, at which time a third division should be created, does not violate the provision of the constitution that no bill shall contain more than one subject, nor the requirement that to be valid a statute must fix a single date at which all parts of it shall take effect.

2. —— *Same.* An act providing for a change in the courts of counties having a certain population need not, in order to be operative, fix a method by which the population is .to be ascertained.

3. CREATION OF NEW COURT — *Method of Ascertaining Population.* Where a statute provides for the creation of an additional division of the district court in counties having a certain population, and such statute has been acted upon in a county shown by the state census to have the required population, the court will regard it as applying to such county.

4. COUNTY ATTORNEY — *Appointment — Joint Action of Two Judges.* Under a statute providing for the immediate creation of two divisions of the district court, and for the subsequent creation of a third, and further providing that the power of appointing a county attorney in case of a vacancy shall be exercised jointly by the judges of the two divisions, or a majority of them, such an appointment, during the time that the court is composed of two divisions, can only be made by the concurring action of the two judges.

5. —— *Resignation—Acceptance.* Under the conditions stated in the preceding paragraph, where a county attorney resigns that office on account of having been elected as a member of the national house of representatives, and the two judges treat the office as vacant, their action amounts to an acceptance of the resignation.

Original proceeding in quo warranto. Opinion filed January 24, 1912. Judgment for plaintiff.

*John S. Dawson,* attorney-general, for the plaintiff.

*Thomas J. White,* for the defendant; *W. Littlefield,* of counsel.

The opinion of the court was delivered by

MASON, J.: In November, 1911, Joseph Taggart, the county attorney of Wyandotte county, resigned on account of having been elected a member of the national house of representatives. The general statute (Gen. Stat. 1909, § 2235) provides that such a vacancy shall be filled by appointment by "the judge of the district

court." An act of 1909 (Laws 1909, ch. 112, Gen. Stat. 1909, §§ 2445-2458) provided for several divisions of the district court in counties having over 100,000 inhabitants, one judge to serve for each division, and all powers of appointment delegated by law to the judge of the district court to be exercised "jointly by the judges of the divisions, or a majority of them." In Wyandotte county a second division of this court had been created under this act, the original judge of the district court being designated as the judge of the first division. The two judges were unable to agree upon an appointee to fill the vacancy. The judge of the first division, entertaining the view, upon grounds to be hereafter stated, that he had authority to do so, named as county attorney James M. Meek, who undertook to act in that capacity. The attorney-general brings this action to determine the validity of his claim to the office. The cause is submitted for judgment upon the pleadings, the facts not being in dispute.

The defendant maintains that his appointment is valid upon these grounds, namely: (1) that the act of 1909 is unconstitutional; (2) if constitutional, it is not in operation in Wyandotte county; (3) if constitutional and in operation there its provisions authorize an appointment by the judge of the first division of the district court.

The first objection made to the constitutionality of the act is that in violation of the provision that "no bill shall contain more than one subject" (Const. art. 2, § 16) it relates to two distinct matters, namely, district courts and courts of common pleas. The act in effect provided that wherever a court of common pleas existed, it should, at the expiration of the term of office of its judge, be superseded by a new division of the district court, a judge of which should be elected in 1912. The court of common pleas, while not having precisely the same jurisdiction as the district court, was very similar to it, and relieved it of much of its burden of

The State, *ex rel.*, v. Meek.

litigation. The discontinuance of the court of common pleas was in the interest of uniformity; it gave occasion for an additional division of the district court; and it was germane to the plan adopted for the general litigation of the county to be handled by a single court consisting of several divisions. Essentially the act contained but one subject. (*In re Greer*, 58 Kan. 268, 48 Pac. 950; Note, 79 Am. St. Rep. 464; 36 Cyc. 1022; 26 A. & E. Encycl. of L. 575.)

The second and only other objection made to the act on constitutional grounds is that it violated the provision that "the legislature shall prescribe the time when its acts shall be in force." (Const. art. 2, § 19.) That provision has been interpreted to imply that a single definite time must be fixed when an act as an entirety shall become a law, and in several instances a statute has been held to be void because of a failure to comply with that rule. (*Comm'rs of Miami Co. v. Hiner*, 54 Kan. 334, 38 Pac. 286; *Finnegan v. Sale*, 54 Kan. 420, 38 Pac. 477; *The State v. Deets*, 54 Kan. 504, 38 Pac. 798.) The two later cases cited merely profess to follow the earlier one, without extending the doctrine there declared, although it may be doubted whether the last one actually fell within the rule. In the original case the section relating to the time of taking effect of the statute expressly provided that one portion should take effect at one fixed time, and another portion at a different one. In the opinion it was said:

"Acts are frequently passed in the body of which provision is made that they shall act upon certain classes and communities at different times, and upon the happening of certain contingencies; but there is a clear distinction between such acts and the one we are considering. In those cases the act goes into effect and becomes a law as an entirety, and if the act meets every contingency when it arises, and operates alike upon all that come within the scope of its authority, it is regarded as uniform in its operation, and is not to be deemed invalid merely because it does not become applicable to the classes, communities, or things at the

same moment of time, or which may be subsequently governed by it. To be valid, however, such an act must become a law in its entirety, and not in sections or fragments." (*Comm'rs of Miami Co. v. Hiner*, 54 Kan. 334, 337, 38 Pac. 286.)

The act of 1909 now under consideration is of the kind described in this quotation. By its express terms it took effect upon its publication. It all became a law at that time. It provided that in the counties to which it applies the district court should consist of "two or more" divisions; that upon its taking effect "the duly elected and presiding judge of the district court" should be the judge of the first division; that the governor should appoint a judge for the second division, but not for the third unless there should be a vacancy in the office of judge of the court of common pleas; that in case of such vacancy the governor should appoint a judge of the third division, and thereupon the court of common pleas should be discontinued. A separate section provided that the act should not interfere with the court of common pleas prior to January 13, 1913. The effect of this provision upon the others just mentioned is a matter for interpretation, but in any view there is no postponement of the time of taking effect of any part of the act. The statute fixes a rule of future conduct. It prescribes what shall take place in various contingencies, some of which may never happen. What may actually be done under it is uncertain, depending upon the conditions that arise. But every part of the statute became the law of the state upon its publication. The distinction is clearly pointed out in *The State v. Newbold*, 56 Kan. 71, 42 Pac. 345. (See, also, 36 Cyc. 1201.)

The defendant maintains that even if the law is constitutional it is not operative in Wyandotte county, because it makes no provision as to how the population of a county shall be determined for the purposes of the act. No such provision is necessary. Judicial notice is taken

of the population of counties.    (16 Cyc. 870; 17 A. & E. Encycl. of L. 898.)    Since the statute provides no specific test, the actual fact will govern.    The federal census of 1910 gives Wyandotte county a population of 100,068.    The statutes of Kansas provide for an annual enumeration (*Sickly v. Allen County*, 83 Kan. 740, 112 Pac. 621), and this shows a population in 1908 of 111,-316 (16 Bien. Rep. Sec. of State, 32; 16 Bien. Rep. State Board of Agriculture, 953.)    "Every proceeding instituted under state authority for determining the matter of population is *prima facie* evidence, and controlling above any evidence of population furnished by a different government."    (*Turner v. Comm'rs of Neosho Co.*, 27 Kan. 639, 642.)    The governor, the local authorities, and the people of the district directly affected, having acted upon the theory that the county is within the class described in the statute, the matter is certainly not open to question in this proceeding.

The language of the statute is that the power of appointment "shall be exercised jointly by the judges of the divisions, or a majority thereof."    (Gen. Stat. 1909, § 2448.)    The defendant maintains that this provision was not intended to be operative until there were three divisions of the court; that the legislature would not have used the expression "a majority thereof" in speaking of the action of only two judges, unless the "presiding judge" was to be deemed a majority where there were but two; that this view is strengthened by the fact that in the act of 1911 (Laws 1911, ch. 151) providing for two divisions of the district court in certain counties, the appointment was expressly committed to the judge of the first division.    We can not accept this reasoning.    The language quoted purports to apply upon the taking effect of the statute, whether two or three judges are to act, and is not inappropriate to the purpose.    If there are but two judges the action must be taken "jointly"; if there are three, the concurrence of a majority is sufficient.    The phrase "the duly elected

and presiding judge of the district court" (Gen. Stat. 1909, § 2446), obviously was employed merely to designate the incumbent of the office at the time the law took effect, "presiding" being used as the equivalent of "officiating" or "acting." If the act of 1911 is deemed to affect the matter at all the fair inference seems to be that the difference in the language employed indicates a difference in purpose. A natural explanation is that the legislature was willing to take the risk of a disagreement between two judges during a limited period, but not where a two-division court was to exist indefinitely.

A final contention made by the defendant is that even if he is held not to be the county attorney, he is nevertheless entitled to perform the duties of the office in virtue of his having been a deputy at the time Mr. Taggart resigned, on the theory that the resignation has not yet been legally accepted. Strictly speaking, this question is not presented by the pleadings, because the action is brought to determine whether the defendant is himself the county attorney; but as it is argued on the merits upon both sides it may as well be now determined. It has been said that "acceptance of the resignation would not seem . . . to be necessary in the case of offices which take all of the time of the incumbent." (29 Cyc. 1403.) Assuming that an acceptance was necessary to render the resignation effective, it need not have been formal. Any conduct indicating a purpose to accept on the part of the two judges charged with the duty of filling the vacancy would be sufficient. (Note 75, 29 Cyc. 1404; Note, 23 L. R. A. 683.) The defendant in his answer assumes an acceptance by asserting that no person but himself has a right to the office of county attorney, and that the present action ought not to be maintained because it is against public policy for the office to remain vacant. The written order of the judge of the first division, undertaking to appoint the defendant, contains the recital

that "there is now a vacancy in said office." The attitude of the judge of the second division is not distinctly disclosed by the pleadings in this case, but in the defendant's brief it is said that the answers of the two judges to a proceeding in mandamus brought to require them to act in the matter show that they were unable to agree in attempting to fill the vacancy. It is clear that the two judges treated the resignation as operative, and this had the same effect as a formal acceptance.

Upon these considerations we conclude that the defendant is not lawfully entitled to the office, and judgment is therefore rendered for the plaintiff.