No. 20,051.

P. H. Coney and 7489 other Electors of the City of Topeka, *Plaintiffs*, v. The Mayor and Commissioners of the City of Topeka et al., *Defendants*.

SYLLABUS BY THE COURT.

1. STATUTES — *Erroneous Use of Figure — Legislative Intent — Proper Figure Substituted.* Application of the familiar rule of statutory construction that where the legislature erroneously uses one word or figure for another and the context affords the means of determining conclusively the legislative intent, the proper word or figure will be deemed substituted therefor.

2. CITIES — *Petition for Election to Abandon Commission Form of Government — Testing Sufficiency of Petition.* The sufficiency of a petition to the mayor and commissioners of a city of the first class asking that an election be called to determine whether such city shall abandon its commission form of government should be tested by the number of registered voters whose signatures appear on such petition.

3. SAME — *Petition Returned to Petitioners if Insufficient.* Where such petition is insufficient, the statute requires that it be returned to the petitioners.

Original proceeding in mandamus. Opinion filed June 12, 1915. Writ allowed in part and denied in part.

*J. G. Slonecker, A. B. Quinton, J. H. Guy, E. L. O'Neil, S. L. Lashbrook, T. D. Humphreys,* and *A. A. Graham,* all of Topeka, for the plaintiffs.

*George P. Hayden,* city attorney, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: This is an application for a writ of mandamus to compel the mayor and commissioners of Topeka to call an election to determine whether the city of Topeka should abandon its commission form of government and return to the old system of government by a mayor and councilmen.

The statute authorizing such election is section 1241 of the General Statutes of 1909, which, in part, reads:

"Any city which shall have operated for more than four years under the provisions of this act may abandon such organization thereunder and accept the provisions of the general law of the state then applicable to the cities of its population, or if now organized under special charter may resume said special charter, by proceeding as follows: Upon the petition of not less than twenty-five per centum of the electors of such city, a special election shall be called at which the following proposition only shall be submitted: 'Shall the city of (name the city) abandon its organization under chapter 114 of the General Session Laws of 1907, and the acts amendatory thereto, and become a city under the general law governing cities of like population (or, if now organized under special charter, shall resume said special charter)? . . . The sufficiency of such petition shall be determined, the election ordered and conducted, and the result declared, generally as provided by section 3 of this act, in so far as the provisions thereof are applicable."

On February 3, 1915, the plaintiff and 6099 other petitioners filed with the city clerk a petition with their signatures attached, seeking that such election be called. The city clerk examined the petition and found that of the total number of petitioners only 2290 were registered, and as the total number of registered voters in Topeka at that time was 16,978, the qualified petitioners did not amount to the twenty-five per centum fixed by the statute to set in motion this election machinery. The plaintiff demanded a return of the petition, and this was refused. Some time later, he and others filed another petition, which for the purposes of this case may be considered as an amendment to the original petition, although we need not decide that point, which second petition contained 1679 signatures. That petition taken separately or as an

amendment to the original and the number of names on both petitions totaled did not contain twenty-five per centum of the registered voters of the city, and the city clerk made his report to the mayor and commissioners accordingly, and they declined to call the election.

Plaintiff again demanded the return of the petitions and this was again refused. Hence this lawsuit.

Only one question is involved. Is it necessary that the petitioners under section 1241 of the General Statutes of 1909 be registered voters? The closing language of that section provides that the sufficiency of the petition shall be determined as provided in section 3 of the same act so far as applicable. It is apparent that the figure "3" is a misnomer. Section 3 has nothing to say about petitions or elections. It relates to oaths of office, salaries of mayor and commissioners and the time to be devoted to their duties. (Laws 1909, ch. 74, § 3, Gen Stat. 1909, § 1231.) The original act relating to commission government in cities of the first class was chapter 114 of the Laws of 1907. It did not provide for the recall of city officers nor for the abandonment of commission government. In 1909 certain amendments were made to the act of 1907 (Laws 1909, ch. 74), among which were two independent sections; section 5 providing for the recall of city officers and section 7 providing for an election to abandon the commission form of government. Section 5 (Gen. Stat. 1909, § 1239) is the only section of the latter act, or of either act, to which the reference at the close of section 7 (Gen. Stat. 1909, § 1241) could apply. Obviously and undoubtedly section 5 is intended. Force and effect are to be given to the words requiring the sufficiency of the petition to be determined, and this is readily and conclusively done by reference to section 5. And otherwise it is utterly abortive and nonsensical. Section 5 covers recall elections in detail. It provides that upon presentation of a petition signed by twenty-five per centum of the voters of the city demanding a recall election, it shall be the duty of the city clerk to ascertain the sufficiency of the petition as follows:

"Within ten days from the date of filing such petition the city clerk shall examine and from the voters' register ascertain whether or not said petition is signed by the requisite number of qualified electors . . . and he shall attach to said petition his certificate showing the result of such examination. If by the clerk's certificate the petition is shown to

be insufficient, it may be amended within ten days from the date of said certificate. The clerk shall, within ten days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same." (Laws 1909, ch. 74, § 5, Gen Stat. 1909, § 1239.)

This is the section to which the legislature intended to refer for the determination of the sufficiency of plaintiff's petition. Nor does this do the slightest violence to standard rules of statutory construction. It is familiar law that legislative enactments are not any more than any other documents to be defeated on account of errors, mistakes or omissions. Where one word or figure has been erroneously used for another or a word omitted, and the context affords the means of correction, the proper word or figure will be deemed substituted or supplied. This is only making the naked letter of the statute yield to its obvious intent. (*Brook v. Blue Mound,* 61 Kan. 184, 59 Pac. 273; *Reese v. Hammond,* 94 Kan. 459, 146 Pac. 997; Sutherland on Statutory Construction, § 260.) From this it follows that the petitioners are not entitled to a writ of mandamus requiring the defendants to call the election; but are they entitled to the writ directing defendants to return to plaintiff the petition? We think so. The statute provides for this in specific terms.

"And if his (the city clerk's) certificate shall show the same (the petition) to be insufficient, it shall be returned to the person filing the same." (Laws 1909, ch. 74, § 5, Gen. Stat. 1909, § 1239.)

There is a specious suggestion that the petitions show some evidence of criminality and that it would be convenient to have them kept where the county attorney could have access to them if he cared to institute some sort of criminal proceedings. If any such hypothetical case shall develop into an actuality, it will be no inconvenience to the prosecuting officer to procure them from the plaintiff, P. H. Coney, and the writ will issue directing the defendants to surrender the petitions to him as the statute prescribes.

It is so ordered.