No. 43,314

Floy S. Parker *Appellee,* v. Continental Casualty Company, a Stock Insurance Company, *Appellant.*

(383 P. 2d 937)

Opinion filed July 10, 1963.

*Roscoe W. Graves,* of Emporia, argued the cause and was on the briefs for the appellant.

*Marc A. Hurt,* of Emporia, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This action involves the application of the "grace period" provision of the Uniform Policy Act pertaining to policies of accident and sickness insurance.

There is no controversy as to the pleadings, and the facts are not in dispute.

The plaintiff, Floy S. Parker, is a resident of Emporia, Kansas. She is the sole beneficiary of an insurance policy issued by the defendant, Continental Casualty Company, to Wilbern W. Parker, plaintiff's husband. The policy provided indemnity for loss of life through accidental means. The policy was issued January 23, 1952. It provided for payment of premiums quarterly.

Wilbern W. Parker paid all quarterly premiums due under the policy except the one due February 1, 1961. He died on February 24, 1961, as the result of accidental injury. On February 28, 1961, plaintiff paid the quarterly premium due February 1, 1961, by mailing defendant a check for $25.00. Plaintiff notified defendant of the death of Parker on March 2, 1961. The defendant sent plaintiff proof of loss forms which were promptly executed and returned to the defendant.

There was no "grace period" specifically set forth in the policy for the payment of renewal premiums not paid by the renewal dates. The defendant denied liability under the policy and this action was commenced.

The plaintiff contended that a thirty-one day "grace period" was made a part of the policy by reason of the provision of G. S. 1961 Supp., 40-2203 (A) (3).

The defendant contended that the statute providing for a "grace period" did not become effective until five years after the act became effective on June 30, 1951, by reason of the provision of G. S. 1961 Supp., 40-2213.

The district court rendered judgment in favor of the plaintiff and defendant has appealed.

We will first present the pertinent section of the act.

G. S. 1961 Supp., 40-2202 covers the form of the policy to be used and does not require specific attention.

G. S. 1961 Supp., 40-2203 contains the following introductory statement:

"Except as provided in paragraph (C) of this section each such policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this subsection in the words in which the same appear in this section: . . ."

The paragraph (C) to which the section refers, deals only with filing policies and submission of policies to the insurance commissioner.

Paragraph (A) (3) of G. S. 1961 Supp., 40-2203 provides that a provision shall be included in the policy as follows:

" 'Grace period: A grace period of _____' (insert a number not less than '7' for weekly premium policies, '10' for monthly premium policies. and '31' for all other policies) 'days will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force.' . . ."

G. S. 1961 Supp., 40-2204 provides:

"(A) Other policy provisions: No policy provision which is not subject to section 3 [40-2203] of this act shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to this act.

"(B) Policy conflicting with this act. A policy delivered or issued for delivery to any person in this state in violation of this act shall be held valid but shall be construed as provided in this act. When any provision in a policy subject to this act is in conflict with any provision of this act, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of this act."

The section with which we are chiefly concerned, G. S. 1961 Supp., 40-2213, provides:

"A policy, rider or endorsement, which could have been lawfully used or delivered or issued for delivery to any person in this state immediately before the effective date of this act may be used or delivered or issued for delivery to any such person during five (5) years after the effective date of this act without being subject to the provisions of sections 2 [40-2202], 3 [40-2203] or 4 [40-2204] of this act."

The act contains the following penalty provision:

"Any person, partnership or corporation willfully violating any provision of this act or order of the commissioner of insurance made in accordance with this act, shall forfeit to the state of Kansas a sum not to exceed five hundred dollars ($500) for each such violation, which may be recovered by a civil action. The commissioner of insurance may also suspend or revoke the license of an insurer or agent for any such willful violation." (G. S. 1961 Supp., 40-2214.)

The last two sections of the act (Laws of 1951, Chapter 296) which were not carried into the General Statutes should also be noted.

"SEC. 16. Sections 40-1109, 40-1109a, 40-1109b, 40-1405, 40-1406, 40-1407, and 40-1408 of the General Statutes are hereby repealed.

"SEC. 17. This act shall take effect and be in force from and after its publication in the statute book." (The act was published in the statute book June 30, 1951.)

The appellant summarizes its contention as follows:

"It is appellant's contention that Section 40-2213 means just what it plainly says, namely that policies without a grace period that could have been lawfully issued prior to the effective date of the Uniform Act, may be issued for a period of five (5) years after the effective date of the act and are not governed by the act and no grace period is to be read into them by virtue of the act."

The appellant would contend that the effective date of G. S. 1961 Supp., 40-2202, 40-2203, and 40-2204 was June 30, 1956, while the effective date of the other sections of the act was June 30, 1951.

The construction suggested by appellant, if sustained, would render the entire act unconstitutional. The Constitution of Kansas does not permit closely related parts or sections of an act to become effective at different times.

Article 2, Section 19, provides:

"The legislature shall prescribe the time when its acts shall be in force, and shall provide for the speedy publication of the same; . . ."

This court first considered the matter in *Comm'rs of Cherokee Co. v. Chew*, 44 Kan. 162, 24 Pac. 62. It is stated:

". . . The plaintiff in error contends that the act of 1887, chapter 159

of the laws of that year, took effect after its publication in the statute book, and was in force, or became operative as to the offices named therein, upon the expiration of the terms of the respective occupants thereof. If this construction is adopted, the act takes effect in part at one time and in part at other and different times, and may on that account be obnoxious to the constitutional provision above quoted, which requires the legislature to fix a *time* when its enactments shall take effect and be in force. If another construction can be placed upon § 8 of the Laws of 1887, above quoted, which frees it from any objection under the constitutional provision, and such construction is equally consistent with the language of said § 8 and with the intention of the legislature in enacting the law of which § 8 is a part, such construction should be adopted. If we construe the words, 'and after the present term of the officers hereinbefore named shall have expired,' to mean after the terms of all the officers named shall have expired, the act not only takes effect but becomes operative in all its parts and upon all the offices therein named at the same time, and; is thus freed from the objection that it takes effect piecemeal, and also, as we think, from the objection that the legislature in its passage did not fix a time when the act should take effect and be in force. . . ." (p. 164.)

In *Comm'rs of Miami Co. v. Hiner*, 54, Kan. 334, 38 Pac. 286, it is again stated:

"The constitutional limitation referred to provides that 'the legislature shall prescribe the time when its acts shall be in force.' This provision plainly requires that the legislature shall fix a single definite time when its act as an entirety shall become a law. According to the practice and legislative course in this state, the last section of every act fixes a definite time when the act as a whole shall go into effect. It is sometimes by publication in a newspaper, in the statute book, or at some fixed time after a publication has been made. It was not intended that one section or provision of an act should become a law, while other sections or provisions of the same act were in an inchoate and embryonic stage. A legislative act, whether general or special, is passed as an entirety, approved as an entirety, and the generally accepted interpretation of the constitutional limitation is that it must become a law as an entirety. . . ." (p. 336.) (See also, *Finnegan v. Sale*, 54 Kan. 420, 38 Pac. 477, and *State v. Deets*, 54 Kan. 504, 38 Pac. 798.)

The question was next considered in *State v. Newbold*, 56 Kan. 71, 42 Pac. 345. In that case this court was considering an act relating to fees and salaries of the county officers of Summer County. The act changed the fees and salaries of all of the county officers except the county surveyor. The act provided that the county surveyor was to receive compensation for his services as now provided by law, ". . . but he shall not receive pay for keeping his office open for the convenience of the public for more than one day each week." It was noted in the opinion:

".  .  . The tenth and twelfth sections of the act in question read as follows:

'"'Sec. 10. This act shall not effect the fees or salaries of the present county treasurer, county clerk, county attorney, register of deeds, clerk of the district court, sheriff, or probate judge, but shall be in full force and effect as to county surveyor.'

"'Sec. 12. This act shall take effect and be in force from and after its publication in the official state paper.'

"The contention on behalf of the defendant is, that the act takes effect at different times, and therefore, under the decision in the case of *Comm'rs of Miami Co. v. Hiner*, 54 Kan. 334, and other cases following it, is void. .  .  ." (p. 72.)

In the opinion the court stated:

".  .  . The act became a law on publication, and actively operative as to the county surveyor. As to the other county officers, it was also a law when published, but it did not change the compensation of the then incumbents of the county offices named, but did fix the compensation of their successors." (p. 74.)

The last case in which the question was considered is that of *State, ex rel., v. Meek,* 86 Kan. 576, 120 Pac. 555. As the case reviews the previous decisions and contains the last expression of this court, we quote from the opinion at some length:

"The second and only other objection made to the act on constitutional grounds is that it violated the provision that 'the legislature shall prescribe the time when its acts shall be in force.' (Const., art. 2, § 19.) That provision has been interpreted to imply that a single definite time must be fixed when an act as an entirety shall become a law, and in several instances a statute has been held to be void because of a failure to comply with that rule. (*Comm'rs of Miami Co. v. Hiner,* 54 Kan. 334, 38 Pac. 286; *Finnegan v. Sale,* 54 Kan. 420, 38 Pac. 477; *The State v. Deets,* 54 Kan. 504, 38 Pac. 798.) The two later cases cited merely profess to follow the earlier one, without extending the doctrine there declared, although it may be doubted whether the last one actually fell within the rule. In the original case the section relating to the time of taking effect of the statute expressly provided that one portion should take effect at one fixed time, and another portion at a different one. In the opinion it was said:

"'Acts are frequently passed in the body of which provision is made that they shall act upon certain classes and communities at different times, and upon the happening of certain contingencies; but there is a clear distinction between such acts and the one we are considering. In those cases the act goes into effect and becomes a law as an entirety, and if the act meets every contingency when it arises, and operates alike upon all that come within the scope of its authority, it is regarded as uniform in its operation, and is not to be deemed invalid merely because it does not become applicable to the classes, communities, or things at the same moment of time, or which may be subsequently governed by it. To be valid, however,

such an act must become a law in its entirety, and not in sections or fragments.' (*Comm'rs of Miami Co. v. Hiner*, 54 Kan. 334, 337, 38 Pac. 286.)

"The act of 1909 now under consideration is of the kind described in this quotation. By its express terms it took effect upon its publication. It all became a law at that time. It provided that in the counties to which it applies the district court should consist of 'two or more' divisions; that upon its taking effect 'the duly elected and presiding judge of the district court' should be the judge of the first division; that the governor should appoint a judge for the second division, but not for the third unless there should be a vacancy in the office of judge of the court of common pleas; that in case of such vacancy the governor should appoint a judge of the third division, and thereupon the court of common pleas should be discontinued. A separate section provided that the act should not interfere with the court of common pleas prior to January 13, 1913. The effect of this provision upon the others just mentioned is a matter for interpretation, but in any view there is no postponement of the time of taking effect of any part of the act. *The statute fixes a rule of future conduct. It prescribes what shall take place in various contingencies, some of which may never happen.* What may actually be done under it is uncertain, depending upon the conditions that arise. But every part of the statute became the law of the state upon its publication. The distinction is clearly pointed out in *The State v. Newbold*, 56 Kan. 71, 42 Pac. 345. (See, also, 36 Cyc. 1201.)" (Emphasis ours. p. 579.)

It is the duty of this court to uphold legislation rather than defeat it. It is presumed that the legislature intended to pass a valid law. If there is any reasonable way to construe legislation as constitutionally valid, it should be so construed.

In *State ex rel., v. Fadely*, 180 Kan. 652, 308 P. 2d 537, the court stated, beginning at page 658 of the opinion:

"As preliminary to a consideration of the contentions of the plaintiff, we refer to long and well-established rules of this jurisdiction to the effect that the constitutionality of a statute is presumed and that all doubts must be resolved in favor of its legality and before the statute may be stricken down it must clearly appear the statute violates the constitution (*Carolene Products Co. v. Mohler*, 152 Kan. 2, 102 P. 2d 1044; *Board of County Comm'rs v. Robb*, 166 Kan. 122, 199 P. 2d 530; *State, ex rel., v. Board of Regents*, 167 Kan. 587, 207 P. 2d 373); that it is the court's duty to uphold the legislation rather than defeat it and if there is any reasonable way to construe the legislation as constitutionally valid, that should be done (*Marks v. Frantz*, 179 Kan. 638, 298 P. 2d 316); that, at the threshold of the inquiry of validity of a statute, courts start with the presumption that the lawmakers intended to enact a valid law and to enact it for the accomplishment of a needful purpose (*State, ex rel., v. Board of Education*, 137 Kan. 451, 453, 21 P. 2d 295); . . ."

(See, also, *Quality Oil Co. v. du Pont & Co.*, 182 Kan. 488, 322

P. 2d 731, and *State, ex rel., v. Board of County Commissioners,* 188 Kan. 318, 362 P. 2d 81.)

In *Felten Truck Line v. State Board of Tax Appeals,* 183 Kan. 287, 327 P. 2d 836, it is stated:

"If possible, the court will construe a statute to prevent discrimination and unequal protection of the laws. This court will always approach questions challenging the constitutionality of a statute with a disposition to determine them in such a manner as to sustain the validity of the enactment in question. (*Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 152 P. 2d 53.) The construction supporting a statute is preferred to one destroying it. (*Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P. 936.) Where possible, the provisions of an act must be considered together to resolve consistency rather than inconsistency, and a construction upholding the provision of the statute is favored. (*Terrill v. Hoyt,* 149 Kan. 51, 87 P. 2d 238.) . . ." (p. 294.)

There is still another reason why the construction which appellant attempts to place on G. S. 1961 Supp., 40-2213, would not be tenable. Chapter 296 of the Laws of 1951 repealed, effective June 30, 1951, all of the existing statutes pertaining to policy provisions for accident and sickness insurance. It repealed G. S. 1949, 40-1109, which contained some seventy separate paragraphs covering policy provisions most of which were similar to the provisions of G. S. 1961 Supp., 40-2203. It repealed G. S. 1949, 40-1109a which covers policy provisions for family expense polices. It repealed G. S. 1949, 40-1405 to 40-1408, which covered policy provisions for mutual assessment, health and accident associations.

We cannot assume that although these sections were specifically repealed, the legislature intended that they remain effective, by implication, for a period of five years, such time as it is contended G. S. 1961 Supp., 40-2202, 40-2203, and 40-2204, were to become effective. Neither can we assume that there was intended to be a period of five years without statutory requirements for policy provisions.

We construe G. S. 1961 Supp., 40-2213, to mean that a policy, rider or endorsement which could have been lawfully *used* or delivered or issued for delivery immediately before the effective date of the act, could be *used* for five years after the effective date of the act without containing the additional provisions set out in G. S. 1961 Supp., 40-2202 and 40-2203, but that such provisions would be read into the policy.

It will be noted that the only place the word "used" is found in

the statute is in G. S. 1961 Supp., 40-2213. The legislature intended that the old policies could be used for a period of five years, subject to the provision of the act, while the companies were adjusting their policy provisions to conform to the new law.

We are informed that such a construction cannot be harmonized with the fact that section 13 of the act (G. S. 1961 Supp., 40-2213) also permits policies to be used and issued for a five year period without being subject to section 4 of the act (G. S. 1961 Supp., 40-2204). Perhaps it cannot. However, we should not for that reason destroy the intent and purpose of the legislature. Section 4 (A) of the act is in the same situation as sections 2 and 3 (G. S. 1961 Supp., 40-2202 and 40-2203) insofar as the application of section 13 is concerned. We do not believe the legislature intended to include the reference to section 4 (B) in section 13. The reference appears to be an inadvertent error. The language used in section 4 (B) has the same effect as that used in G. S. 1949, 40-1408, and is quite similar to the language used in G. S. 1949, 40-1109 (i). These provisions were repealed. It cannot be assumed that the legislature intended to repeal the two provisions without some provision to replace them before the expiration of five years. It must have been the intent of the legislature to make reference only to section 4 (A) in section 13 of the act. As so construed, all of the provisions of the act are in harmony.

The intent and purpose of the legislature should govern the construction of a statute even though words or statutory references at some place in the statute must be inserted or omitted.

It has been stated:

"In this jurisdiction a fundamental rule, to which all others are subordinate, is that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted (*Hunziker v. School District*, 153 Kan. 102, 107, 109 P. 2d 115, and cases there cited). See, also, West's Kansas Digest, Statutes, § 181, and Hatcher's Kansas Digest [Rev. Ed.], Statutes, § 71.

"Another rule of equal importance is that in construing a statute the legislative intention is to be determined from a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so far as to make them consistent and sensible. (*Iola B. & L. Ass'n v. Allen County Comm'rs*, 152 Kan. 365, 103 P. 2d 788.) This rule, stated in various forms, has been applied by this court throughout its history. See West's Kansas Digest, Statutes, § 205, and Hatcher's Kansas

Digest [Rev. Ed.], Statutes, § 77." (*In re Estate of Diebolt*, 187 Kan. 2, 353 P. 2d 803, p. 13.)

". . . In construing the statute, the object of the statute must be kept in mind and such construction placed upon it as will, if possible, effect its purpose even though the statute be somewhat indefinite. If it is susceptible of more than one construction it must be given that construction which will best effect its purpose rather than one which would defeat it, and this is true even though such construction is not within the strict literal interpretation of the statute, and even though both are equally reasonable. (59 C. J. § 571, pp. 961-964.)

"Another well-established rule of construction was reiterated and applied in the recent case of *Hunziker v. School District*, 153 Kan. 102, 109 P. 2d 115, where it was said:

" 'It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history.' (p. 107.)" (*Shumaker v. Kansas State Labor Dept.*, 154 Kan. 418, 118 P. 2d 550, p. 420.)

"The books are full of rules for statutory construction, but they were all enunciated with the idea of determining what the legislature had in mind in enacting the acts under consideration. It is a cardinal rule that all statutes are to be so construed as to sustain them rather than ignore or defeat them; to give them operation if the language will permit, instead of treating them as meaningless. (Lewis' Sutherland Statutory Construction, § 498.)

"In Black on Interpretation of Laws (2d ed.) is the following:

" 'When the interpretation of a statute according to the exact and liberal import of its words would lead to absurd or mischievous consequences, or would thwart or contravene the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason, disregarding or modifying, so far as may be necessary, the strict letter of the law.' (§ 29.)" (*Clark v. Murray*, 141 Kan. 533, 41 P. 2d 1042, p. 536. See, also, *Tatlow v. Bacon*, 101 Kan. 26, 165 P. 835, and *Coney v. City of Topeka*, 96 Kan. 46, 149 P. 689.)

The policy in question was subject to the grace period provided by G. S. 1961 Supp., 40-2203 (A) (3) from the time it was issued.

The appellant also complains of the judgment allowing appellee attorney fees as a charge against appellant in the amount of $400. The complaint is well founded.

G. S. 1961 Supp., 40-256 provides in part as follows:

". . . if it appear from the evidence that such company or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected part of the costs. . . ."

684

The phrase "without just cause or excuse" was added to the section by amendment in 1957. (Laws of 1957, Chap. 276, Sec. 1.) The language used appears to be clear and unambiguous. The question for determination is, did the appellant have "just cause or excuse" for challenging the application of the grace period, as provided in G. S. 1961 Supp., to the policy in question? We believe that what has been said in the opinion leaves no doubt but that it did.

Whether attorney fees are to be allowed must depend on the facts and circumstances of each particular case. We are constrained to hold that an insurance company has just cause to seek an interpretation of the ambiguous provisions of a statute. It is only where the insurer refuses "without just cause or excuse" to pay in accordance with the terms of the policy that an allowance can be made to the insured for reasonable attorney fees. (*Allen v. Hartford Fire Ins. Co.*, 187 Kan. 728, 359 P. 2d 829; *Fleming v. National Cash Register Co.*, 188 Kan. 571, 363 P. 2d 432; *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 366 P. 2d 219, and *Lindesmith v. Republic Mutual Fire Ins. Co.*, 189 Kan. 201, 368 P. 2d 35.)

The judgment of the district court ordering payment of the principal sum due under the policy is affirmed. That part of the judgment ordering defendant to pay plaintiff's attorney fees in the sum of $400 is reversed.

APPROVED BY THE COURT.