No. 52,851

JOHN W. SOSSOMAN, *et al., Appellants,* v. BOARD OF COUNTY COMMISSIONERS, *et al., Appellees.*

(630 P.2d 1154)

Opinion filed July 17, 1981.

*Robert D. Ochs,* of Fisher, Ochs and Heck, P.A., of Topeka, argued the cause and was on the brief for the appellants.

*John R. Martin,* Shawnee County Counselor, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

McFARLAND, J.: This action is a challenge by plaintiff property owners to the power of the defendant board of county commissioners to assess the cost of a sewage treatment facility on the basis of assessed value of the land and improvements in the sewer districts served by the facility. The trial court held in favor of the county and the landowners appeal from said determination.

A sewage treatment plant was constructed which services Shawnee County Sewer Districts Nos. 3, 5, 9 and 33. On No-

vember 1, 1980, a levy of 48.59 mills was extended upon the assessed valuation of all real property, including improvements, located in said sewer districts. By virtue of the time factor involved, this levy represented the payment of the first two years' principal and interest on the bonds. The plaintiffs, as owners of improved real property, seek to enjoin the defendant board from proceeding, contending such a levy results in plaintiffs' property bearing a disproportionately high percentage of the cost of the sewage treatment facility. The trial court upheld the defendant board's authority herein and this appeal results.

The county is proceeding under K.S.A. 19-2712, which provides in pertinent part:

"The board of county commissioners . . . shall have the power to construct, . . . one or more systems of disposal works for the purification of the sewage of the county, or any part thereof, and to build, . . . such disposal works, and such pumping stations, pumps or other apparatus, in providing means to handle and dispose of such sewage, as the board of county commissioners may designate. The costs and expenses of building the same shall be borne by the various districts then or thereafter using the same: . . . *And provided further,* That the costs and expenses of constructing, reconstructing, enlarging or extending any sewage treatment or disposal works and facilities in any sewer district located in a county in which all or part of a federal reservoir is located, may be paid by the issuance and sale of general improvement bonds in like manner as provided for in the general bond law, to mature serially over a period of not to exceed twenty (20) years, which bonds shall bear interest at not to exceed the maximum rate of interest prescribed by K.S.A. 1973 Supp. 10-1009. The board of county commissioners shall each year levy a tax upon all taxable tangible property in the district in an amount which, together with revenue available from other sources for such payments will be sufficient to pay interest and principal of such bonds."

If applicable to Shawnee County, K.S.A. 19-2712, on its face, authorizes the actions of the defendant board. Accordingly, plaintiffs seek to have the statute (1) declared inapplicable to Shawnee County; (2) held invalid on constitutional grounds; or (3) judicially construed to achieve the result they desire.

The first question considered must of necessity be whether K.S.A. 19-2712 is applicable to Shawnee County. It is undisputed that (1) Clinton Reservoir (a federal reservoir) extends some three miles into Shawnee County; (2) ordinarily, only a relatively small amount of water is in the Shawnee County portion of the reservoir; and (3) only rarely will the reservoir be filled to capacity. Although the point is unclear, plaintiffs appear to assert that the location of the actual water level is somehow determinative of

whether part of the reservoir exists in Shawnee County. The point is without merit. The trial court found that a part of a federal reservoir existed in Shawnee County and, accordingly, held K.S.A. 19-2712 applicable. No error is shown in such determination.

Plaintiffs next contend K.S.A. 19-2712 is violative of Article 2, Section 17 of the Kansas Constitution, which provides:

"All laws of a general nature shall have a uniform operation throughout the state: *Provided,* The legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to any one or more of such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."

Plaintiffs argue that K.S.A. 19-2712 is special legislation. As originally enacted, K.S.A. 19-2712 applied solely to counties designated as urban areas. This provision remains in the statute, but in 1973 the federal reservoir provision was added by amendment. Plaintiffs contend the 1973 amendment was for the benefit of Jefferson County, whose existing public services were being burdened by the building of Lake Perry. A cursory check indicates at least twenty-five Kansas counties have federal reservoirs in whole or in part within their boundaries.

The trial court held:

"[T]he portion of K.S.A. 19-2712 added thereto by amendment in 1973, see Ch. 121, L. 1973, is applicable to Shawnee County. This amendment applies to any county in which all or any part of a federal reservoir is or may be located. The amendments are of general application to any county which may fall within its provisions, and do not constitute special legislation, in violation of Article 2, Section 17, of the Kansas Constitution, either before or after the amendment thereof as approved by the qualified electors of the state on November 5, 1974. *State, ex rel., v. Board of County Commissioners,* 188 Kan. 318, 362 P.2d 81; *Johnson County Comm'rs v. Robb,* 161 Kan. 683, 171 P.2d 784."

We agree with the trial court.

We turn now to the issues raised pertaining directly to the following provision of K.S.A. 19-2712:

"The board of county commissioners shall each year levy a tax upon all taxable tangible property in the district in an amount which, together with revenue available from other sources for such payments will be sufficient to pay interest and principal of such bonds."

Plaintiffs contend "a tax upon all taxable tangible property in the district" is an "ad valorem tax" and cannot therefore be a special assessment. In the alternative, plaintiffs contend K.S.A.

19-2712 should be construed to require the cost to be paid by special assessment, which plaintiffs aver can only be accomplished by separately determining the benefit to each tract without regard to value. Black's Law Dictionary 58 (4th ed rev. 1968) defines "ad valorem" as meaning "[a]ccording to value." Plaintiffs equate taxes imposed on an ad valorem basis with general taxes, and then distinguish such taxes from special assessments. General taxes are commonly levied on an ad valorem basis and such taxes are often called "ad valorem taxes." Plaintiffs further contend that if the statute (K.S.A. 19-2712) does in fact call for the levying of an ad valorem tax, then it is violative of Article 11, Section 1 of the Kansas Constitution for failing to be uniform and equal.

In *Johnson County Comm'rs v. Robb,* 161 Kan. 683, 171 P.2d 784 (1946), remarkably similar issues were raised. In *Robb,* this court was asked to construe G.S. 1945 Supp. 19-2731 to 19-2752, both inclusive. That statutory scheme provided for the creation of main sewer districts, for the construction of main and lateral sewers and disposal works, and for the issuance of bonds to pay the costs thereof. The projects were to be paid for by "a tax levy on the assessed valuation of lands and improvements within the main sewer district" (19-2735, now K.S.A. 1980 Supp. 19-2735). In upholding the act, the court reasoned at 690-692:

"Although the word 'tax' is used in the act, we first examine whether in fact any 'tax' is to be levied under the act in question. Is the money to be raised to be used for the benefit of the public generally, or is it to be used to pay for installations of special benefit to the land and the improvements thereon? Is the word 'tax' as used in the statute a misnomer, and was assessment or special assessment intended? In *Railway Co. v. Railroad Co.,* 75 Kan. 167, 88 Pac. 1085, the question was whether assessments for local improvements made against property specially benefited thereby were included within an agreement to pay taxes. In the course of the opinion it was said there is a well-understood difference between general taxes levied for the support of the government and special charges for betterments. The court held:

" 'The word "taxes" has two well-recognized meanings, one inclusive and the other exclusive of special assessments for local improvements. Which meaning is intended where the word is used in a written contract must be determined by the context.' (Syl. ¶ 1.)

. . . .

"Although the language of the several statutes applicable makes it more clear than in the one now under consideration, there are many instances wherein the value of real estate, with or without improvements, and without regard to personal property, is the basis for determining the charge to be made against the real estate

for public improvements such as sidewalks, pavements and sewers. Another instance where the legislative intent is more clearly expressed may be found in a statute pertaining to drainage districts where provision is made for authority to levy a general tax to create a general fund, and to levy assessments and special taxes (G.S. 1935, 24-407, *Eleventh, Twelfth*). Under that statute assessments are made upon real estate. So far as we are aware it has never been contended that because the word 'tax' was used in these statutes, that made the special assessment a tax within the meaning of the constitutional provision mentioned [Art. 11, Sec. 1], and that the statutes were therefore invalid. The statute under consideration provides first that the cost of construction of the main trunks and sewage disposal plants shall be raised by the issuance and sale of bonds, and that the board shall fix a levy, applied to the valuation of real estate including lands and improvements, to raise the necessary money to pay principal and interest as such payments come due (19-2736). But it is clear from that section and other parts of the act that the moneys so raised are to pay for benefits to the real estate and are not to be used for general public purposes. The statute also provides for construction of lateral sewers, the cost to be spread equally per square foot over all the land within the lateral sewer district, to be collected 'in addition to other taxes and assessments,' and further that the board may spread the cost over a period not to exceed twenty years 'instead of levying the entire tax or special assessment for such cost at one time.' There is further provision for publishing notice of apportionment of cost and fixing a time within which 'such assessments may be paid in full without interest.' And other references to 'assessments' may be found in the section (19-2737).

"Our attention is also directed to authorities from other states and to quotations from text writers, which will not be further mentioned. We think it clear that the statute contemplates, not a tax for general governmental purposes, but a means of ascertaining amounts due for improvements made benefiting particular tracts of real estate, and that practically, the so-called tax is no more than a special assessment to pay for the improvement and not a tax within the purview of article 11, section 1 of our constitution. Under such circumstances the constitutional provision has no application. (See *Hines and others v. City of Leavenworth and others,* 3 Kan. 186; *Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234; *Comm'rs of Franklin Co. v. City of Ottawa,* 49 Kan. 747, 31 Pac. 788, 33 Am. St. Rep. 396; *City of Wichita v. Board of Education,* 92 Kan. 967, 142 Pac. 946.) We conclude that the statute under consideration does not violate the above provision of our constitution for the reasons just considered."

The term "ad valorem" does not appear in *Robb,* but the issue was raised concerning the validity of special assessments based on value. In *Robb,* the court stated at 692-694:

"3. Defendant then says that if this court shall determine the tax authorized by the statute is a special tax or assessment, that as such it is arbitrary, unreasonable and unconstitutional as it is levied upon property in the district without regard to benefits derived from the construction of the main trunk sewers which cannot be equally available or accessible to all lands within the district.

"[T]he defendant . . . ignores the findings . . . the proposed main sewers will serve not merely the lands immediately abutting thereon but will

constitute an integral part of the sewers serving the entire district and will best serve the needs of all lands within the district.

. . . .

"Defendant also directs our attention to *Gilmore, County Clerk, v. Hentig,* 33 Kan. 156, 5 Pac. 781; *Botts v. City of Valley Center,* 124 Kan. 9, 257 Pac. 226; *Putnam v. City of Salina,* 136 Kan. 637, 17 P.2d 827; and to authorities from other states to the effect that assessments made for public improvements are valid only when the improvements confer special benefits on the property assessed, and that such is a general rule is conceded. But it is equally well recognized that the legislature is vested with discretion as to how public improvements shall be made and paid for, so long as the methods used do not violate constitutional limitations. See *Simpson v. Kansas City,* 46 Kan. 438, 26 Pac. 721; *Coates v. Nugent,* 76 Kan. 556, 92 Pac. 597; *Roby v. Drainage District,* 77 Kan. 754, 95 Pac. 399; *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855; as well as the cases above mentioned.

" . . . We think it was within the power of the legislature to provide such a method of construction and for such an assessment to pay for the main trunk sewers and disposal plant, which would be of value and benefit to all lands within the district. Such a power has been exercised in authorizing cities generally to pay for designated portions of main sewers or to divide the cost thereof with a sewer district (G.S. 1935, 12-619); in authorizing cities of the first class to construct main and intercepting sewers and to tax the cost to the district benefited (G.S. 1935, 13-1013); and a somewhat similar provision is made as to cities of the second class (G.S. 1935, 14-516 to 14-521, inc.)."

Interestingly, the argument was made in *Robb* that unimproved land received no benefit from a sewer system and should not be assessed therefor. In the case before us the opposite argument is made—improved land derives no greater benefit from a sewage treatment facility and all land should be assessed on an unimproved basis.

We adhere to *Robb* and conclude:

1. The tax authorized by K.S.A. 19-2712 is a special assessment and, accordingly, is not a tax within the purview of Article 11, Section 1 of the Kansas Constitution; and

2. It is within the power of the legislature to provide that the cost of a sewage treatment facility be paid by the districts it serves on the basis of a special assessment against the value of the land with improvements.

As their last point, plaintiffs contend the defendant board acted arbitrarily and capriciously in assessing the levy herein. Most of the claimed wrongful acts involve alleged misapplication and misconstruction of K.S.A. 19-2712. These contentions have been disposed of earlier in this opinion. However, one such matter needs to be addressed. The term "taxable tangible property" used

in K.S.A. 19-2712 includes personal property as well as land and improvements thereon. The defendant board did not levy against personal property located in the sewer districts. Plaintiffs assert that the board's failure to levy against personal property was both arbitrary and capricious. The trial court found and concluded as follows:

"Failure to extend the levy in question to all personal property in the districts served by the facility for which the tax in question herein is levied operates to the financial advantage of the Plaintiffs herein, as owners of all or much of the developed property in the districts served by the facility.

"K.S.A. 60-907 grants to individuals the right of injunctive relief to enjoin the doing of any act not authorized by law that will result in the creation of any additional levy of tax, charge or assessment. *De Forest v. Herbert,* 204 Kan. 516, 464 P.2d 265 (1970). The omission of taxable personal property from the levy in question does not operate to increase or enlarge the tax burden borne by the Plaintiffs herein for the cost of the treatment facility located in Sewer District No. 33 and serving Sewer Districts 3, 5, 9 and 33, and hence such omission affords no basis for equitable relief herein."

We agree with the trial court.

Before concluding this opinion, some additional comments are appropriate. The issues raised in this case basically involve raw power—the power of the board of county commissioners to act and the power of the legislature to enact the statute in question. Neither the wisdom of the legislature's enactment of the statute nor the wisdom of the defendant board's utilization of it are legitimate subjects for judicial review. The court can certainly understand the plaintiffs' concern over the major escalation in their tax burden arising from the construction of the sewage treatment facility, particularly in view of some of the aggravating factors shown to exist. However, no legal justification for the issuance of an injunction against the defendant board has been established.

The judgment is affirmed.