No. 41,292

The City of Kansas City, Kansas, *Appellee*, v. George Robb, Auditor of State, State of Kansas, *Appellant*.

(332 P. 2d 520)

Opinion filed December 6, 1958.

*Fred W. Rausch, Jr.*, Assistant Attorney General, of Topeka, argued the cause, and *John Anderson, Jr.*, Attorney General, of Topeka, was with him on the briefs for appellant.

*Ward D. Martin*, Topeka, argued the cause, and *C. W. Brenneisen, Jr.*, City Attorney, and *Francis J. Donnelly*, Assistant City Attorney, both of Kansas City, were with him on the briefs for appellee.

*Joseph H. McDowell*, of Kansas City, filed a brief *amicus curiae*.

The opinion of the court was delivered by

Fatzer, J.: The action was in mandamus to compel the state auditor to register $400,000 principal amount of general obligation urban renewal bonds issued by the city of Kansas City, Kansas. Trial was by the court which found that resolution No. 15855 properly set out the purpose of the urban renewal bonds and was in accord with G. S. 1957 Supp. 17-4754 (*d*); that ordinance No. 41559, authorizing the issuance of the bonds, was in compliance with the statutes relating to the issuance of urban renewal general obligation bonds, and that G. S. 1957 Supp. 17-4748 authorized the inclusion of commercial properties in urban renewal projects. The state auditor was directed to register the bonds, and he has appealed from that judgment and the order overruling his motion for a new trial.

The allegations of the application for the writ and the answer will not be summarized except to say it was alleged by plaintiff and denied by defendant that G. S. 1957 Supp. 17-4754 (*d*) and the proceedings leading up to the issuance of the bonds in question

were legal, regular, and in conformity with the constitution of Kansas and the urban renewal law ( G. S. 1957 Supp. 17-4742—17-4761 ), the validity of which was sustained by this court in *State, ex rel., v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 296 P. 2d 656. That opinion was filed April 28, 1956. At the regular 1957 session of the legislature, what appears now as G. S. 1957 Supp. 17-4754 ($d$) was amended in particulars hereafter noted, and gives rise to some of the questions presented in this controversy. In discussing the various contentions of the parties, all reference to statutes is made to G. S. 1957 Supplement unless otherwise noted.

Defendant's first contention is that the population limitations in 17-4754 ($d$) constitutes special legislation in violation of Art. 2, Sec. 17 of the constitution. It is argued that the statute authorizes the issuance of general obligation bonds without a vote of the electors in cities over 125,000 population, except upon a protest petition, while a vote is required in all cities having less population, and that the act could have been made general in its application to all cities. The point is not well taken. Prior to its amendment in 1957, 17-4754 ($d$) provided that bonds issued pursuant to its authority must be issued in the manner provided by the general bond law of the state, *i. e.,* after legal notice of an election and an affirmative vote of the people of the city. Section 17-4754·($d$) as presently appears, reads:

"For the purposes of this section, or *for the purpose of aiding in the planning, undertaking or carrying out of an urban renewal project* of a municipality, such municipality may ( in addition to any authority to issue bonds pursuant to section 17-4751 of the General Statutes Supplement of 1955) *issue and sell its general obligation bonds: Provided,* That before any general obligation bonds may be issued under the urban renewal law, the city shall adopt a resolution, finding and declaring it necessary to issue such bonds, which resolution shall state the purpose for which said bonds are to be issued and the maximum amount of bonds to be issued, and shall contain a statement relating to the provision for protest as hereinafter provided, which resolution shall be published once each week for two consecutive weeks in the official paper of the city, and if within sixty (60) days after the date of the last publication of said resolution, a protest, signed by not less than five percent (5%) of the electors in the municipality, as determined by the vote cast for secretary of state at the last preceding general election, is filed with the city clerk, the bonds shall not be issued, unless the governing body calls an election within the time and in the manner prescribed by section 10-120 of the General Statutes of 1949 or any amendments thereto, and the proposition shall receive the favorable vote of a majority of the votes cast on the proposition: *Provided further, That no city with a population of less than 125,000 shall issue general obligation bonds*

*under the urban renewal law unless issued pursuant to and as the result of such an election as hereinbefore prescribed."* (Emphasis supplied.)

This court has repeatedly held that to have uniformity, legislation need not affect every individual, class or community in the state, but that it is competent for the legislature to classify and adopt a general law to the class created, provided the class is a natural and genuine one, having a substantial and reasonable relation to the subject matter involved. A clear statement of this principle is made in *State, ex rel., v. Urban Renewal Agency of Kansas City,* supra, wherein the court stated:

"As stated, the act here under consideration applies only to cities having a population of more than 75,000. No other limitation is mentioned. Classifications based solely upon population quite uniformly have been held valid, provided, of course, they were based upon real and substantial distinctions which bore a reasonable and substantial relation to the subject matter involved. See *State, ex rel., v. City of Topeka,* 168 Kan. 663, 215 P. 2d 644; *City of Lawrence v. Robb,* 175 Kan. 495, 265 P. 2d 317, and *Common School District No. 6 v. Robb,* 179 Kan. 162, 293 P. 2d 230." (l. c. 437.)

See, also, *State, ex rel., v. Kansas City,* 134 Kan. 157, 4 P. 2d 422, and *McDonald v. Joint Rural High School District No. 9,* 180 Kan. 563, 565, 306 P. 2d 175.

The challenged act makes election in cities over 125,000 population unnecessary, except upon a protest petition. No other limitation is prescribed. Thus, only the largest cities in the state (now Kansas City and Wichita) are relieved of holding a bond election. In *State, ex rel., v. Urban Renewal Agency,* supra, we held that as cities become more populous they are subject to more slum and blighted areas, which are injurious to the health and welfare of their inhabitants and that population is a legitimate ground for classification in an urban renewal law. Certainly, the expense and delay of holding bond elections in larger cities and the greater need and urgency for urban renewal action justifies a classification on the basis of population, which, in this case, has a real and substantial relation to the purpose of the statute. It is conceivable that differences of opinion may exist in smaller cities as to whether slum and blighted areas are present, thus making population a legitimate ground for classification and differentiation with respect to holding elections to issue bonds to undertake and carry out urban renewal projects. Moreover, it is well settled that if any state of facts reasonably can be conceived that will sustain the classification, there is a presumption of the existence of that state of facts, and one who assails it must carry the burden of showing by a resort to common knowledge

or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. Not having pleaded facts nor directed attention to matters of common knowledge which may be judicially noticed, the defendant has not sustained the burden upon him to show the classification in question was arbitrary. (*Board of County Comm'rs v. Robb,* 166 Kan. 122, 133, 199 P. 2d 530, and cases therein cited.) We hold the act in question to be a general law and not in violation of the second clause of Art. 2, Sec. 17 of the constitution.

It is next contended that ordinance No. 41559 violates G. S. 1949, 13-1421 for the reason its subject is not clearly expressed in its title. It is argued that both the resolution No. 15855 and the ordinance No. 41559 refer to "projects" in the plural and that the areas encompassed by such projects were not definitely described therein, thus depriving electors of the opportunity of determining whether to file a protest petition, and that the lack of such notice amounted to the taking of property without due process of law in violation of Sec. 1 of the 14th Amendment of the federal constitution, and further, that since both revenue (17-4751) and general obligation bonds (17-4754 [*d*]) may be issued in connection with urban renewal projects, the ordinance is invalid by reason of the failure to specify in its title which type of bonds were to be issued.

There are several good reasons why the contention lacks merit. In the first place, on August 30, 1955, the city adopted resolution No. 15255 pursuant to 17-4746 placing the urban renewal law into effect and determined that one or more slum or blighted areas existed in the city, the rehabilitation, conservation, or redevelopment of which was necessary in the interest of public health, safety, morals and welfare of the residents of the city. Thereafter, on July 11, 1957, the city adopted the resolution in question, No. 15855, which reads in part:

"That it is necessary for the City of Kansas City, Kansas, *to issue general obligation bonds* under Chapter 156 of the 1957 Session Laws, in the amount of $1,250,000 *for the purpose of aiding in the planning, undertaking, and carrying out of urban renewal projects* in the City of Kansas City, Kansas.

"It Is Further Ordered that this resolution shall be published once a week for two consecutive weeks in the official paper of the City of Kansas City, Kansas, and that if within sixty (60) days after the date of the last publication of said resolution, a protest signed by not less than five percent (5%) of the electors in the municipality, as determined by the vote cast for Secretary of State at the last preceding general election, is filed with the City Clerk, the bonds shall not be issued unless the governing body calls an election within

the time and manner prescribed by Section 10-120 of the General Statutes of 1949, or any amendments thereto, and the proposition shall receive the favorable vote of the majority of votes cast on the proposition."

From the record before us, it appears the city complied with 17-4754 (*d*) in all respects. The resolution was properly adopted and notice was duly given to the electors that $1,250,000 general obligation bonds would be issued to aid in the planning, undertaking and carrying out of urban renewal projects, unless a protest petition was filed with the city clerk requiring a vote on the proposition. *But, despite that notice no protest was filed.* Later, and on April 17, 1958, the city adopted ordinance No. 41559 implementing the resolution, and authorizing the issuance of $400,000 principal amount of general obligation bonds—a part of the $1,250,-000 found necessary by the resolution for urban renewal purposes. It was unnecessary that notice again be given before the ordinance could be adopted and general obligation bonds provided in the resolution be issued; nor was it necessary that the projects be described in the ordinance and resolution. The statute (17-4754 [*d*]) does not require it. The purport of that section is that a city may provide for the expense of planning an urban renewal project or projects even before the boundaries of the area or areas are established. Although the statute refers to "an urban renewal project," words importing the singular number only may be extended to several persons or things (G. S. 1949, 77-201), and it would be an unwarranted construction to say that a city such as Kansas City may aid in the planning, undertaking and carrying out of only one urban renewal project at any one time. As previously indicated, resolution No. 15255 placed the urban renewal law into effect and determined that one or more slum or blighted areas should be rehabilitated or redeveloped. Without quoting them, we think the various sections of the act (17-4743, 17-4745, 17-4746) when construed together sustain the conclusion that general obligation bonds may be issued to aid in the planning, undertaking and carrying out of more than one urban renewal project at one time.

In the second place, the issuance of the bonds did not amount to the taking of property of a taxpayer or elector without due process of law. The bonds, when legally authorized and issued, become a lien upon all taxable property in the city for which it is made the duty of the governing body to levy in each year a sum sufficient to pay the principal and interest on the bonds falling due

in that year (G. S. 1949, 10-113). We do not have before us the taking of property of a taxpayer or an elector to carry out an urban renewal project, but, in passing, we note that in such event 17-4749 authorizes the city to exercise the power of eminent domain to acquire such property in the manner provided by G. S. 1949, Ch. 26, in which proceeding the taxpayer or elector would be duly notified and opportunity afforded to establish the reasonable and fair market value of the property to be taken.

In the third place, the failure to expressly describe in the title of the ordinance the type of bonds to be issued is not fatally defective. While good practice would dictate that the type of bonds should be included in the title of the ordinance, we think that which was included was sufficient to properly identify and describe general obligation urban renewal bonds. The title of the ordinance reads:

"An Ordinance authorizing the issuance of Urban Renewal Bonds of the City of Kansas City, Kansas, in the principal amount of $400,000, *for the purpose of aiding in the planning, undertaking and carrying out of urban renewal projects in said City.*" (Emphasis supplied.)

As is noted, 17-4754 (*d*) authorizes cities to issue and sell general obligation bonds *for the purpose of aiding in the planning, undertaking or carrying out of urban renewal projects.* This authorization is separate and distinct from that contained in 17-4751 providing for the issuance of revenue bonds *"to finance the undertaking of any urban renewal project"* under the act. The title of the ordinance clearly indicates the bonds are issued pursuant to 17-4754 (*d*), hence they are general obligation bonds of the city. A city is not required by G. S. 1949, 13-1421 to include in the title all of the details of the provisions of the ordinance; it is enough if the title is sufficiently broad to indicate in general terms the provisions of the ordinance (*Taneyhill v. Kansas City*, 133 Kan. 725, 729, 3 P. 2d 645). See, also, McQuillin, Municipal Corporations, 3d ed., Vol. 5, Sec. 16.19. Without recounting at length the terms of the ordinance, we hold the title to be free from the objections made by the defendant.

The defendant asserts he correctly refused to register the bonds for the reason that commercial properties were included in at least one proposed urban renewal area, and that the urban renewal law does not contemplate nor authorize the inclusion of business or commercial properties in such areas. The city admits that commercial or business properties were included in projects which have

been established under urban renewal plans of the city. The statute (17-4760), among other things, defines "slum area" and "blighted area." Without quoting these definitions in full suffice it to say that "slum area" is defined to include "residential or nonresidential" properties and "blighted area" is defined to mean "an area (other than a slum area) which by reason of the presence of a substantial number of slum, deteriorated or deteriorating structures . . ." We think the definitions of the act clearly answer the contention. Buildings or improvements which are "nonresidential" constitute commercial or business buildings and improvements as set out in the definition of "slum area." The words "blighted area" refer to slum, deteriorated or deteriorating structures. Furthermore, 17-4748 (c) empowers the city to enter upon any building or property in any urban renewal area and acquire the same by eminent domain or otherwise, together with any improvements thereon, and to hold, improve, clear or prepare for redevelopment such property. In view of the foregoing, we hold that the urban renewal law applies to commercial or nonresidential properties, and that the auditor was not justified in refusing to register the bonds for that reason.

Other contentions of the defendant have been carefully considered, but it is unnecessary to discuss them in view of our holding that the city fully complied with 17-4754 (d) in issuing the general obligation bonds. It not having been affirmatively made to appear that the trial court erred in directing the state auditor to register the bonds, that judgment is affirmed.

It is so ordered.