No. 55,199

THE BOARD OF COUNTY COMMISSIONERS OF RILEY COUNTY, KANSAS, *et al., Plaintiffs/Appellees,* v. THE CITY OF JUNCTION CITY, KANSAS, *Defendant/Appellant.*

(667 P.2d 868)

Opinion filed July 15, 1983.

*Richard A. Pinaire,* city attorney, argued the cause and was on the brief for the appellant.

*Dan H. Myers,* of Myers and Pottroff, of Manhattan, argued the cause, and *William L. Frost,* of Morrison, Frost and Olsen, of Manhattan, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action for a declaratory judgment which attacks the validity of a Junction City ordinance annexing the Fort Riley military reservation and other lands in Riley County. The plaintiffs are the Board of County Commissioners of Riley County, the city of Manhattan, and 22 individual landowners. The defendant is the city of Junction City. The district court entered summary judgment in favor of the plaintiffs, holding the

annexation to be null and void. The city of Junction City has appealed.

The undisputed facts, issues of law, contentions of the parties, and a decision on the issues are contained in a well written, comprehensive memorandum opinion by Judge Terry L. Bullock. Certain portions of the district court's opinion which contain the rationale of the district court in determining the issues will be referred to from time to time in this opinion.

The facts in the case are undisputed and essentially are as follows: On February 2, 1982, the city of Junction City, acting through its city commission, adopted resolution 975, which announced the commission's intent to annex, *inter alia*, Fort Riley, Kansas, a military reservation consisting of some 98,000 acres, situated in Geary and Riley Counties and adjacent to the city of Junction City. In the early morning hours of April 7, 1982, city ordinance S-2290 was adopted on second and final reading. No written notice of the proposed annexation, as required by K.S.A. 12-520a(*c*), was ever given other than to the government of the United States of America.

In adopting ordinance S-2290, the city commission apparently intended to annex only the Fort Riley military reservation. In fact, however, the legal description contained in the ordinance, a single continuous perimeter description circumscribing one single tract of land, encompassed not only the Fort Riley military reservation but, in addition, a 10.66 acre tract owned by Riley County, which was its Wilderness Park; a 10.58 acre tract owned by the city of Manhattan, which was its airport; and several tracts of land owned by the individual plaintiffs, which land was located in Riley County and totaled about 1,000 acres more or less. The tracts owned by Riley County, the city of Manhattan, and the individual plaintiffs did not adjoin the city boundary of Junction City as it existed prior to April 7, 1982.

It appears that, following passage of the resolution announcing the city's intent to annex Fort Riley, a great deal of activity in opposition to the annexation was generated in the Kansas legislature which was then in session in Topeka. On April 5, 1982, House Bill 3166 was introduced by the Ways and Means Committee. The following day, April 6, 1982, House Bill 3166 passed both the Kansas House and Senate. Five days later on April 13, 1982, Governor Carlin signed the bill into law. On April 15,

1982, House Bill 3166 was published in the Kansas Register. House Bill 3166 was enacted as Chapter 59 of the 1982 Session Laws and may now be found at K.S.A. 12-529. It provides as follows:

"12-529. **Annexation of military reservation prohibited.** (*a*) The governing body of any city shall not annex any territory of a United States military reservation.

"(*b*) The provisions of this section shall be applicable to any annexation proceedings commencing after December 31, 1981.

"(*c*) For purposes of this section, 'military reservation' means an installation of the United States under the supervision and control of the secretary of the department of the army."

The plaintiffs commenced this action contesting the validity of the annexation on May 6, 1982, in the district court of Riley County. While the action was pending on August 17, 1982, ordinance G-546 was adopted by the city commission of Junction City, the same being its annual K.S.A. 12-517 ordinance declaring the boundary of the city. This ordinance purported to delete from the boundary of the city of Junction City all properties owned by the plaintiffs in this action. Defendant conceded, however, that no de-annexation proceeding had ever been had pursuant to K.S.A. 12-504.

In the district court, the plaintiffs contended that ordinance S-2290 was wholly invalid for three reasons:

(1) The ordinance was not enacted in compliance with K.S.A. 12-519 *et seq.;*

(2) The hearing at which the ordinance passed violated K.S.A. 12-3001 *et seq.* and K.S.A. 75-4317 *et seq.;* and

(3) The provisions of House Bill 3166 prohibited the annexation provided for in ordinance S-2290.

The defendant maintained that ordinance S-2290 was not invalid for the following reasons:

(1) The adoption of its August 15, 1982, boundary ordinance makes moot any issue pertaining to the annexation of plaintiffs' lands and deprives plaintiffs of standing to challenge the subject annexation;

(2) The inclusion of plaintiffs' land within the legal description contained in ordinance S-2290 was simple error of a trivial nature, constituting mere surplusage which should be ignored by the court;

(3) Even if the ordinance is invalid as to plaintiffs' lands, it

should nonetheless be declared valid as to the remaining lands constituting the Fort Riley military reservation;

(4) The court had no jurisdiction to consider alleged violations of the open meeting law (K.S.A. 75-4317 *et seq.*); and

(5) House Bill 3166 is unconstitutional and void. In sum, defendant contended that its annexation, insofar as it pertains to the Fort Riley military reservation alone, was valid and should be upheld.

In his memorandum opinion, Judge Bullock considered each of the contentions of the parties and entered judgment declaring ordinance S-2290 in its entirety to be null and void and of no force or effect.

We do not deem it necessary to consider all of the issues raised in the district court. We will determine this case on two issues presented by the city of Junction City on the appeal:

(1) Whether the trial court erred in holding the city ordinance was in violation of K.S.A. 12-519 *et seq.*; and

(2) Whether House Bill 3166 prohibiting the annexation is constitutional.

As noted above, the defendant contended in the trial court that the adoption of its August 15, 1982, boundary ordinance rendered moot any issue pertaining to the annexation of plaintiffs' lands and thus deprived plaintiffs of standing to challenge the annexation. In disposing of this issue, the trial court held that the issue was not moot and that the plaintiffs had standing, reasoning as follows:

"Pursuant to K.S.A. 12-520, any owner of annexed land may maintain an action challenging the validity of the annexation ordinance in the district court of the county in which the land is situated. In the case at bar, Ordinance No. S-2290 by its terms clearly purported to annex real estate owned by some, and perhaps all, of the plaintiffs. Although defendant may well have intended to annex only the Fort Riley military reservation, the fact remains that the legal description contained in the annexation ordinance clearly included lands owned by Riley County and the City of Manhattan and arguably included lands owned by the individual plaintiffs. The Court thus concludes that plaintiffs have standing to maintain this action inasmuch as all are property owners within the meaning of K.S.A. 12-520. With respect to defendant's claim that this action is moot, the Court is likewise persuaded that this contention lacks merit. The reason defendant enacted its August 15, 1982 boundary ordinance, in addition to perhaps enhancing its posture in this litigation, is that K.S.A. 12-517 requires it. That statute provides:

" 'Before the last day of December in any year in which any territory has been added to or excluded from any city, the governing body of such city shall declare by ordinance the entire boundary of the city.'

The purpose of this statute is to provide a complete description of the total boundary of the city in one place. It is not a means for annexation or for de-annexation. Those procedures are set forth in great detail in K.S.A. 12-519, *et seq.* and in K.S.A. 12-504, *et seq.* A boundary ordinance cannot be used as a substitute for the procedures contained in the annexation and de-annexation statutes. Accordingly, the Court concludes that the boundary ordinance did not, and indeed legally could not, alter Ordinance No. S-2290 and, accordingly, plaintiffs' claims in this action are not moot."

In our judgment, the district court properly disposed of the mootness issue, and we adopt the trial court's rationale in that regard.

We turn now to the issue as to whether the trial court erred in holding that ordinance S-2290 was invalid for the reason that it was not enacted in compliance with K.S.A. 12-519 *et seq.* It is clear from the record, and the defendant concedes, that the plaintiffs did not receive any notice of the proposed annexation as required by K.S.A. 12-520a(*c*). Furthermore, none of the conditions permitting annexation by the city of Junction City applied to plaintiff's property. See K.S.A. 12-520 and 12-520c. There is no doubt that the annexation provided for in ordinance S-2290 was invalid insofar as it pertains to the plaintiffs' property. This leads us to the key issue in the case: Whether the ordinance is invalid only insofar as it pertains to plaintiffs' property or must it be found invalid in its entirety?

In its brief, the city states the issues to be determined in the following language:

(1) Whether Junction City ordinance S-2290 can be construed as annexing only a tract of land owned by the United States (Fort Riley military reservation), or whether it also annexed the separate tracts of land owned by plaintiffs;

(2) Assuming arguendo that plaintiffs are correct in alleging that Junction City ordinance S-2290 invalidly annexed their tracts, whether such invalidity affected the validity of annexation of the remaining tract owned by the federal government. The city argues that ordinance S-2290 should be construed as only annexing Fort Riley. It is undoubtedly true that the city never intended to annex the tracts of land owned by the plaintiffs. The problem arose because the property of the various plaintiffs was clearly included within the metes and bounds description of the area annexed. The city argues that the description of the property was obtained by the city from the federal government, that it was

obviously erroneous, and that the mistake in the metes and bounds description was no fault of the city, which made every effort to comply with the annexation statutes.

K.S.A. 12-520a(*a*) requires the city, in its resolution stating that the city is considering the annexation of land, to describe the boundaries of the land proposed to be annexed. The legal description contained in both the resolution and ordinance clearly but erroneously included the tracts of land owned by the various plaintiffs. The resolution and the ordinance were not ambiguous, for they clearly described the tracts of land owned by the plaintiffs as being included within the annexation. Although the legal description did not coincide with what the city suggested was the legislative intent, it nevertheless did include the plaintiffs' land. We cannot accept the contention of the city that the error in the boundary description was trivial and that it should be treated as mere surplusage, and the balance of the ordinance held valid. The annexed tracts of land owned by the various plaintiffs exceeded 1,000 acres. The trial court correctly held that the annexation provided for in ordinance S-2290 was invalid insofar as it pertained to plaintiffs' property.

We turn now to the issue whether the invalidity of the annexation as to plaintiffs' lands affected the validity of the annexation of the remaining tract of land owned by the federal government. In holding that ordinance S-2290 was invalid in toto, the court applied a doctrine of law followed in this state commonly described as the "all or nothing" rule. In its memorandum opinion, the district court reasoned as follows:

"The only remaining issue in this connection is whether the ordinance is invalid only as it pertains to plaintiffs' property or is invalid *in toto*. In resolving this issue, it is necessary to examine not only our present relevant statute, K.S.A. 1981 Supp. 12-520, but the legal history from which that statute emerged. Prior to 1967, the year in which K.S.A. 12-520 was enacted, it had long been the law in Kansas that an annexation ordinance must stand or fall as a whole and that where an ordinance attempted to annex land in one parcel, only part of which was lawfully subject to annexation, the entire ordinance was held invalid. As early as 1893, the Court in *Stewart v. Adams*, 50 Kan. 568, 32 Pac. 912, held:

" 'We are urged to declare, in the first instance, that the mayor and city council of Argentine did not intend to take into the city the tracts of unplatted land exceeding five acres in extent, although the ordinances, in establishing the boundary line of the city, embraced these tracts of unplatted land; and then we are further urged to declare, after the mayor and city council of Argentine have fixed the boundary line of the city by ordinances, they intended thereby to establish another and wholly different boundary line than

as stated in the ordinances. To give the construction desired, we must give an interpretation to the ordinances different from what they read, and we must change the boundary line of the city of Argentine, as established by the ordinances, and make a new boundary line for the city. We do not think, in the form that the ordinances were drawn and passed, that we can make the changes suggested, by establishing a new and different boundary line.' 50 Kan. at 571-72.

The *Stewart* court held that the boundary line could not be placed by the Court in a position other than that described by the city in its ordinance inasmuch as such 'would be legislation; not the exercise of judicial power.'

"In 1926, in *Ruland v. City of Augusta,* 120 Kan. 42, 242 Pac. 456, our court commented:
" 'The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative—it is not a part either of the executive or judicial branch of the government. In the absence of constitutional restrictions the legislature may exercise this power at will, as was frequently done in our territory prior to the adoption of our constitution.' p. 50.

Accordingly, by this early date the law was clear that the Court could not draw any boundaries to correct alleged errors in a single-tract annexation ordinance. The designation of boundaries was clearly held to be a purely legislative function which could neither be performed by nor delegated to the judicial branch. The Kansas 'all or nothing' rule found favor in other states as well. See, for example, *Donovan v. City of Louisville,* 299 S.W.2d 636, 638 (Ky. 1956), where the Kentucky court, in holding that it could not validate the annexation of only a part of the single tract annexed, commented:

" 'The rule laid down is supported by the great weight of authority, and it is also amply grounded on logic. The basic rationale for this rule is found by examining the *nature* of the annexation process. Since annexation is essentially a legislative matter, Lenox Land Co. v. City of Oakdale, 137 Ky. 484, 125 S.W. 1089; 62 C.J.S., Municipal Corporations, § 50, p. 146, the legislative act of the city, that is, the ordinance in this case, must stand or fall as a whole. If piecemeal annexation were permitted, the trier of facts (usually the jury) would possibly be empowered to decide exactly what territory would be annexed and what would not, and such a procedure would destroy the orderly conduct of annexation. The city decides how much territory it wishes to annex. It gets it all or none.'
See also *City of Clinton v. Owners of Property Situated Within Certain Described Boundaries,* 191 N.W.2d 671 (Iowa 1971) (it is·not the privilege of the court to decree annexation of only part of the territory sought); *Sullivan v. City of Omaha,* 183 Neb. 511, 162 N.W.2d 227 (1968) (it is not for the courts to determine what portions may be properly annexed, for the fixing of boundary lines is a legislative act); *City of Irving v. Dallas County Flood Control Dist.,* 383 S.W.2d 571 (Tex. 1964) (the court has no power to reframe the ordinance to eliminate territory which is not adjacent to the annexing city); *Batie et al. v. City of Webster,* 80 S.D. 295, 122 N.W.2d 764 (1963) (if a petition to exclude land from a

city embraces territory which a court has no authority to exclude, the whole petition must be denied); and, *City of Aurora v. Empire District Electric Company,* 354 S.W.2d 45 (Mo. App. 1962) (the court's contraction or expansion of boundaries as laid out by the city council would be an attempted invasion of the legislative function).

"It was thus clear from early times that annexation ordinances, at least insofar as they purported to describe a single tract of land, were either valid or invalid as a whole. But what about zoning ordinances which described several separate tracts of land? Could these tracts be considered individually with respect to the validity of the annexation or did they, as in the single tract annexation cases, likewise stand or fall as a whole? Kansas law was somewhat inconsistent on this point prior to 1967. In the mentioned case of *Stewart v. Adams,* on rehearing, the Court hinted that the 'all or nothing' rule might not apply: '[i]f either ordinance has merely added to the city of Argentine, as originally bounded, certain described lots or parcels of land, as is usual in such cases   .   .   .   .' 50 Kan. at 571.

"In *State, ex rel., v. City of Topeka,* 175 Kan. 488, 264 P.2d 901 (1953), however, the court appeared to use the 'all or nothing' rule even in a separate tract annexation case. In *James v. City of Pittsburg,* 195 Kan. 462, 407 P.2d 503 (1965), the city attempted to annex a 75 acre subdivision, which subdivision included 15 lots of 5 acres. By statute, the city could annex a single tract of land not exceeding 20 acres. Reversing the judgment for the city, the court rejected the city's argument that the annexation was proper because no individual lot or tract exceeded 20 acres. The court's language again hinted that the 'all or nothing' rule might not have been applied if the tracts had been separately described in the ordinance:

" 'We are not impressed with the logic of this argument. The simple answer to such a contention is that the city did not attempt, in Ordinance G-47, to annex separate individual lots or tracts of 5, or even 15 acres, but sought, instead, to annex a single unplatted tract consisting of 75 acres. In its enactment of Ordinance G-47, attempting to annex Acme Subdivision as one tract, the city went beyond and exceeded the clear and explicit grant of authority contained in G.S. 1949, 13-1602.' 195 Kan. at 464-65.

"Thus, by 1965 Kansas Courts consistently applied the 'all or nothing' rule in single tract annexation cases and seemed to vacillate concerning the applicability of that rule in annexation ordinances containing separately described tracts. In an obvious attempt to clarify the rule relative to annexation ordinances containing separately described tracts, the legislature in 1967 adopted K.S.A. 12-520, which provides in material part:

" 'The governing body of any city may by one ordinance annex one or more separate tracts or lands each of which conforms to any one or more of the foregoing conditions. The invalidity of the annexation of any tract or land in one ordinance shall not affect the validity of the remaining tracts or lands which are annexed by such ordinance and which conform to any one or more of the foregoing conditions.'

Unquestionably, K.S.A. 12-520 was intended to express the legislative intent that the 'all or nothing' rule not apply in factual situations where a city attempts by one ordinance to annex several separate tracts which are separately described in the annexation ordinance.

"This conclusion is also consistent with the legislative intent as gleaned from the face of K.S.A. 12-520, which states the 'governing body of any city may by one ordinance annex one or more *separate* tracts or lands,' (emphasis added) and the invalidity of any such tract or land will not invalidate the remaining tracts or lands.

"In *State, ex rel. v. City of Coffeyville,* 211 Kan. 746, 749, 508 P.2d 1007 (1973), the court in discussing the history of the pertinent provision of K.S.A. 12-520 stated 'the proviso that a city by one ordinance may annex one or more *separate* tracts or lands each of which conforms to any one of the prescribed conditions for annexation, permits consolidation of separate annexations in one procedure, thereby saving time and expense.' (Emphasis added.)

"For those reasons, this Court concludes that K.S.A. 12-520 was intended to apply only in those situations where a city attempts to annex several distinct and separately described tracts. In the instant case, Junction City attempted to annex Fort Riley: one 'tract' as that term is used in K.S.A. 12-520. Because of an apparently erroneous legal description, the ordinance also annexed property owned by Riley County, the City of Manhattan, and perhaps the other plaintiffs as well. Throughout the proceedings Junction City intended to annex only one 'tract.' While K.S.A. 12-520 allows a city to annex one or more separate tracts and the invalidity of any such tract will not invalidate the remaining tracts, that is simply not what the city sought to do in the instant case. Inasmuch as Junction City intended, described and attempted to annex only one tract, the Court concludes that K.S.A. 12-520 is inapplicable to the case at bar and thus, the 'all or nothing' rule applies.

"As previously noted, the annexation of land by municipal corporations is a legislative function. *Sabatini v. Jayhawk Construction Co.,* 214 Kan. 408, 413, 520 P.2d 1230 (1974). The wisdom, propriety, necessity or advisability of annexing territory is not a matter for judicial consideration. *State, ex rel., v. City of Overland Park,* 192 Kan. 654, 656, 391 P.2d 128 (1964). In the present case, Ordinance No. S-2290 attempted to annex only Fort Riley, but the erroneous description caused inclusion of realty owned by Riley County and the City of Manhattan. If this Court were to construe or rewrite the description so as to annex only Fort Riley, such would constitute a prohibited exercise of a legislative function. Because Junction City intended to describe only Fort Riley, the erroneous description affected the validity of the entire ordinance. This Court cannot correct an erroneous description in an ordinance that attempts to annex only one tract. As such, Ordinance No. S-2290 cannot be construed so as to uphold the annexation of Fort Riley while at the same time invalidate the annexation of plaintiffs' property. It necessarily follows that Ordinance No. S-2290 must be invalidated, *in toto,* including the annexation of Fort Riley.

"This ruling is also consonant with considerations of public policy pertaining to rules of general applicability. If cities are required to separately describe and label separate tracts in annexation ordinances, as a condition precedent to the applicability of K.S.A. 12-520, several desirable results will follow. First, persons whose lands are the subject of the proposed annexation will be placed on notice that the city intends to avail itself of the separate tract statute and that they should deal with the propriety of annexation as it relates to their tract alone — in addition to the propriety of the entire annexation scheme. Second, the Court will

be on notice that the city has a legislative intent to annex all or any one of the tracts so described — thus eliminating confusion whether the city would have desired to annex only a part of the tracts should it be held that for some legal reason they cannot annex them all. Third, with legislative intent thus clarified, the Court will be removed from the legislative function of drawing city boundaries, an impermissible judicial function under our concept of the separation of powers."

We agree with the decision of the district court that city ordinance S-2290 was invalid in toto, including the annexation of Fort Riley. The rationale of the district court set forth above is approved and adopted by this court.

The defendant city also contends on the appeal that House Bill 3166 is unconstitutional and has no force or effect because it violates the provisions of Article 12, § 5 and Article 2, § 17 of the Kansas Constitution. Article 12, § 5 provides:

"§ 5. **Cities' powers of home rule.** (a) The legislature shall provide by general law, applicable to all cities, for the incorporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated and cities may be dissolved: *Provided,* That existing laws on such subjects not applicable to all cities on the effective date of this amendment shall remain in effect until superseded by general law and such existing laws shall not be subject to charter ordinance.

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: *Provided,* That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (c)."

Article 2, § 17 provides as follows:

"All laws of a general nature shall have a uniform operation throughout the state: *Provided,* The legislature may designate areas in counties that have become urban in character as 'urban areas' and enact special laws giving to any one or more of such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."

In holding that House Bill 3166 was constitutional and retroactively effective, the district court reasoned as follows in its memorandum decision:

"The only constitutional limitation in the retrospective application of statutes is that they may not operate to deprive anyone of vested rights. In *Board of Greenwood County Comm'rs v. Nadel,* 228 Kan. 469, 618 P.2d 778 (1980), our court held that there can be no vested right in an existing law. Further, Kansas cities cannot gain vested rights superior to the legislative prerogative with respect to annexation matters. Our constitution in Article 12, Section 5(a) grants the legislature exclusive jurisdiction over the manner in which cities may alter their boundaries. See also *State, ex rel., v. School District,* 163 Kan. 650, 185 P.2d 644 (1947); *State, ex rel., v. City of Overland Park,* 215 Kan. 700, 527 P.2d 1340 (1974); *Williams v. Board of Education,* 198 Kan. 115, 422 P.2d 874 (1967); and *State, ex rel., v. Board of Education,* 173 Kan. 780, 252 P.2d 859 (1953).

"Foreign authorities are in accord. In *Deacon v. City of Euless,* 405 S.W.2d 59 (Tex. 1966), state legislation was expressly made retroactive so as to nullify a local annexation ordinance. In holding that retroactive application of the statute, as intended by the legislature, was proper, the court ruled as follows:

'No principle of law is more clearly or firmly settled than that public or municipal corporations, established for public purposes, such as the administration of local or civil government, are not in the nature of contracts between the State and the corporation, and that their charters may be annulled and revoked at the will and pleasure of the Legislature, as it deems the public good may require . ' . . . Such corporations are the creatures of the State, made for a specific purpose, to exercise, within a prescribed limit, powers conferred upon them.

'The State may withdraw these local powers of government at pleasure, and may, through its Legislature, or other appointed channels, govern the local territory as it governs the State at large. It may enlarge or contract its powers or destroy its existence . . . .' 405 S.W.2d at 62.

"After noting that the Home Rule Amendment preserved the priority of general laws over local ordinances, the court stated further:

'We find nothing in the amendment which curbs the power of the Legislature to limit the annexation powers of home rule cities; and nothing, where private rights are not involved, which curbs the power of the Legislature to impose retroactive limitations. Under the general rule quoted above from *Blessing,* the Legislature would have the power by general law, private rights not being involved, to detach from home rule cities all territory annexed since any given time or event; and if it may do that, it certainly had the powers to provide that annexation proceedings pending on March 15, 1963, should conform to the limitations imposed by Section 7, par. B of Art. 970a.'

For the same reasons, House Bill No. 3166 cannot be held inappliable in this action.

"Finally, the city has contended that House Bill No. 3166 violates Article 2, Section 17 of our constitution and Article 12, Section 5(a), which requires the legislature to provide by general law applicable to all cities future methods by which city boundaries may be altered.

"While Article 12, Section 5(a) speaks in terms of 'general laws' Article 2, Section 17 begins with 'all laws of a general nature.' The difference historically attributed to the two phrases was recently noted in *Stephens v. Snyder Clinic Ass'n,* 230 Kan. 115, 631 P.2d 222 (1981), involving a challenge to the constitutionality of a state statute of limitations:

'The difference between a law of a general nature and a general law is that the subject matter of the former must be one common to the people of the entire state, while all that is required of the latter is uniformity of operation.' 230 Kan. at 124-125.

Article 12, Section 5(a) therefore requires that all laws dealing with annexation or the incorporation of cities operate uniformly with respect to cities. With regard to the scope of Article 2, Section 17, the court in *Stephens, supra,* held that:

'The only prohibition contained in Article 2, Section 17, relates to laws of a general nature which affect the people of the state generally. Such laws must apply uniformly throughout the state and thus be *geographically* uniform. We, therefore, hold that Article 2, Section 17, of the Kansas Constitution as it exists today is not applicable to constitutional challenges based upon a denial of equal protection of the laws not involving a claim of lack of geographic uniformity.' *Id.* at 232. (Court's emphasis.)

The geographical uniformity required by Article 2, Section 17 is already mandated in this action by the requirement that the legislation be applicable to all cities. The significance of the decision in *Stephens* was not that it redefined 'uniform operation' or 'laws of a general nature,' but merely that it restricted challenges pursuant to Section 17 to cases involving geographic classifications. Compare *Boyer v. Ferguson,* 192 Kan. 607, 389 P.2d 775 (1964) (Sunday closing law invalidated); *State, ex rel., v. Consumers Warehouse Market,* 185 Kan. 363, 343 P.2d 234 (1959) (unfair competition statute invalidated). Here, the defendant's challenge is admittedly based on a geographic distinction, to-wit: the applicability of the statute to all cities.

"The requirement of uniform geographic application does not mean, of course , that the statute must affect all people or all cities in the state in the same manner. A long and time-tested line of Kansas authority conclusively establishes that legislation may apply to only one governmental entity, and still be 'of uniform operation,' if the class created by the statute is not arbitrary. In *State v. Butler County,* 77 Kan. 527, 94 Pac. 1004 (1908), the court rejected a challenge under Section 17, reasoning significantly as follows:

'It is urged that the act in question is a general law which can apply to not more than two counties in the state. If, however, it operates uniformly on all the members of the class to which it applies it is not open to the objection, provided the classification adopted by the legislature is not an arbitrary or capricious one. The legislature has the power to enact laws of a general nature which will be applicable only to a certain portion of the state or to a certain class of citizens. The following language is from the syllabus in the case of *Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915: "An act, to have a uniform operation throughout the state, need not affect every . . . community alike." The fact that there are at present but few counties to which the exception can apply does not of itself render the act repugnant to this provision of the constitution.' pp. 533-34.

A challenge under the uniformity provision also failed in *City of Kansas City v. Robb*, 183 Kan. 834, 332 P.2d 520 (1958), where the challenge was to a statute which exempted cities with certain populations from holding bond elections. Although in effect the statute only affected two cities, the court found a rational justification for the classification created. See also *Sossoman v. Board of County Comm'rs*, 230 Kan. 210, 630 P.2d 1154 (1981) (statute which applied to any county in which any part of a federal reservoir was located did not violate Section 17, as more than twenty counties in Kansas qualified); *Common School District No. 6 v. Robb*, 179 Kan. 162, 293 P.2d 230 (1956) (the mere fact that a statute only applies to one city, one county, or one school district, does not mean that the law is a special law and violative of Section 17, if it is possible that other governmental units may come within the operation of the act). When the statute affects a limited class, the law does not run afoul of the uniformity provision if the class is a natural one and has a reasonable relation to the subject matter involved. . . .

"The classification in the instant case is rational. It applies to at least four cities which touch or soon may touch the Fort Riley military reservation, even if it be assumed that the only military reservation to which the statute has applicability is Fort Riley. In addition, it is entirely possible that new military reservations under the jurisdiction of the Secretary of the Army may well be established in this state in the future as they have been in the past. The City contends that the statute does not relate to Fort Leavenworth and that it could not apply to McConnell Air Base since that base is under the jurisdiction of the Secretary of the Air Force rather than the Secretary of the Army. Assuming these contentions to be true the Constitution does not require that state statutes apply uniformly to all *military reservations* — the requirement is that they apply uniformly to all affected *cities*.

"Further,

'When a classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption such state of facts exists, and one who assails the classification must carry the burden of showing by a resort to common knowledge or to matters which may be judicially noticed, or other proper proof, that the action is arbitrary.' *Common School District No. 6 v. Robb*, 179 Kan. at 166.

"In the case at bar, defendant has failed to meet the burden of proof to overcome the presumption that the classification contained in House Bill No. 3166 is rational and valid. Accordingly, this Court must also hold that the statute in question is valid, that it retroactively prohibits the proposed annexation, and that for this additional reason, Ordinance No. S-2290 must be declared void."

We have concluded that the district court did not err in holding that House Bill 3166 (K.S.A. 12-529) is valid and constitutional.

In view of our disposition of the case on these issues, we do not deem it necessary to consider the other issues raised on the appeal.

The judgment of the district court is affirmed.