The Honorable Robert Grant State Representative, Second District R.R. 1, Box 63A Cherokee, Kansas 66724
Dear Representative Grant:
You request our opinion regarding 1993 substitute for senate concurrent resolution no. 1608, as amended by the senate committee of the whole. This concurrent resolution proposes a constitutional amendment to permit casinos in Kansas in locations "on or adjacent to a racetrack facility where parimutuel wagering is authorized and approved and where a minimum of 20 days of live racing is conducted annually." You question whether this location limitation is constitutional.
You do not specify which constitutional provision you feel may be offended by the concurrent resolution, however article 2, section 17 of the Kansas constitution comes to mind when the issue is one of limiting applicability of a law to particular locations. Article 2, section 17 provides:
 "All laws of a general nature shall have a uniform operation throughout the state: Provided, The legislature may designate areas in counties that have become urban in character as `urban areas' and enact special laws giving to any one or more of such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."
As a result of the November 5, 1974 adoption of the proposed amendment to this provision, article 2, section 17 no longer prohibits special legislation. State ex rel. Stephan v. Board of Lyon County Comm'rs,234 Kan. 732, 739 (1984); Stephens v. Snyder Clinic Ass'n, 230 Kan. 115,127 (1981). "The effect of this change is that the only prohibition contained in Article 2, Section 17, relates to laws of a general nature which affect the people of the state generally. Such laws must apply uniformly throughout the state and thus be geographically uniform."Stephens, 230 Kan. at 127 (emphasis in original). The Kansas Supreme Court in Board of Riley County Comm'rs v. City of Junction City,233 Kan. 947 (1983), quotes a district court's discussion of the geographic uniformity requirement:
 "`The requirement of uniform geographic application does not mean, of course, that the statute must affect all people or all cities in the state in the same manner. A long and time-tested line of Kansas authority conclusively establishes that legislation may apply to only one governmental entity, and still be "of uniform operation," if the class created by the statute is not arbitrary. In State v. Butler County, 77 Kan. 527, 94 P. 1004 (1908), the court rejected a challenge under Section 17, reasoning significantly as follows:
 "`"It is urged that the act in question is a general law which can apply to not more than two counties in the state. If, however, it operates uniformly on all the members of the class to which it applies it is not open to the objection, provided the classification adopted by the legislature is not an arbitrary or capricious one. The legislature has the power to enact laws of a general nature which will be applicable only to a certain portion of the state or to a certain class of citizens. The following language is from the syllabus in the case of Rambo v. Larrabee, 67 Kan. 634, 73 P. 915: `An act, to have a uniform operation throughout the state, need not affect every . . . community alike.' The fact that there are at present but few counties to which the exception can apply does not of itself render the act repugnant to this provision of the constitution." pp. 533-34.
 "`A challenge under the uniformity provision also failed in City of Kansas City v. Robb, 183 Kan. 834, 332 P.2d 520 (1958), where the challenge was to a statute which exempted cities with certain populations from holding bond elections. Although in effect the statute only affected two cities, the court found a rational justification for the classification created. See also Sossoman v. Board of County Comm'rs, 230 Kan. 210, 630 P.2d 1154 (1981) (statute which applied to any county in which any part of a federal reservoir was located did not violate Section 17, as more than twenty counties in Kansas qualified); Common School District No. 6 v. Robb, 179 Kan. 162, 293 P.2d 230 (1956) (the mere fact that a statute only applies to one city, one county, or one school district, does not mean that the law is a special law and violative of Section 17, if it is possible that other governmental units may come within the operation of the act). When the statute affects a limited class, the law does not run afoul of the uniformity provision if the class is a natural one and has a reasonable relation to the subject matter involved. . . .'" 233 Kan. at 958-959.
Thus, the fact that 1993 substitute for senate concurrent resolution no. 1608, as amended, would permit casinos only in locations where there is a licensed parimutuel racetrack which conducts a minimum of 20 days live racing does not necessarily make it violative of article 2, section17 of the Kansas constitution. As long as the classification created is not arbitrary or capricious, it will not offend this provision of the constitution. We note that the concurrent resolution no longer limits casinos to a specific city (see 1993 senate concurrent resolution no. 1608, as introduced), or to a definite and finite group of locations (see 1993 substitute for senate concurrent resolution no. 1608, as introduced). As currently worded, the provision would allow casinos in any location, existing or future, where a parimutuel track is authorized. Potential bases for the classification include limiting the locations that will require additional law enforcement and regulatory attention; limiting the locations to those where residents have expressed a desire for gambling activities in general; and limiting the locations to those which have undergone the stringent licensing procedures for parimutuel racetracks and the established review of the communities' needs and desires in this regard. In light of these potential goals, it is our opinion that the classification is not clearly arbitrary and therefore would not violate the requirement of article 2, section 17 of the Kansas constitution. [The constitutionality of a provision is presumed; all doubts must be resolved in favor of its validity, and before it may be stricken, it must clearly appear that it violates the constitution. Stateex rel. Stephan v. Martin, 230 Kan. 759, 760 (1982).]
In any event, since the concurrent resolution, if properly adopted, would itself become a part of the Kansas constitution, its provisions would have "equal dignity" to those of article 2, section 17 and all other provisions of the constitution. All provisions would have to be read together to give effect to each if possible. VanSickle v. Shanahan,212 Kan. 426, 451-452 (1973); State ex rel. Donaldson v. Hines,163 Kan. 300, 304 (1947); 16 Am.Jur.2d Constitutional Law sec. 102 (1979); 16 C.J.S. Constitutional Law sec. 27 (1984). An irreconcilable conflict between the two constitutional provisions does not invalidate the new provision; "if there is a conflict between a general and a special provision in a constitution, the special provision must prevail in respect of its subject matter, since it will be regarded as a limitation on the general grant." 16 Am.Jur.2d Constitutional Law sec. 103; 16 C.J.S. Constitutional Law sec. 28. See also VanSickle, supra. "If there is a real inconsistency between a constitutional amendment and an antecedent provision, the amendment must prevail because it is the latest expression of the will of the people." 16 Am.Jur.2d Constitutional Law
sec. 103; 16 C.J.S. Constitutional Law sec. 29. Thus, even if the concurrent resolution did not operate with geographic uniformity, if adopted it would not be invalidated by the more general, antecedent provision in article 2, section 17.
In determining the constitutionality of the location restriction in 1993 substitute for senate concurrent resolution no. 1608, as amended, the equal protection clause and due process clause of the fourteenth
amendment to the United States constitution also come to mind. The constitutional guaranty of equal protection of the laws requires that all persons shall be treated alike under like circumstances and conditions. However, the principle of equal protection is not offended against simply because the exercise of power may result in some inequality. Manzanaresv. Bell, 214 Kan. 589, 609-610 (1974). See Stephenson v. Sugar CreekPacking, 250 Kan. 768, 774 (1992); Bair v. Peck, 248 Kan. 824, 830
(1991). In the absence of a suspect or quasi-suspect class or a fundamental right, the state need only have a rational basis for creating the classification. State v. Risjord, 249 Kan. 497, 501-502 (1991). "Under the `rational basis' test, if there is any rational relationship between the act and legitimate governmental objective, the act passes muster. Under this test one challenging the constitutionality of the act bears the burden of showing no rational relationship exists between the means and the end." Id. The concurrent resolution does not create a suspect or quasi-suspect classification; people would be subject to different treatment depending on their location, not their race, ancestry, gender, etc. Nor does the concurrent resolution affect any fundamental right; there is no fundamental right to a casino in every county. Thus the state need only have a rational basis for the classification, one which is not arbitrary or invidious. Again, we believe the resolution would meet this test.
The test to determine constitutionality of a law under due process and equal protection principles is virtually the same; when a law is attacked as violative of due process, the test is whether the legislative means selected have a real and substantial relation to the objective sought; when a law is attacked as violative of equal protection principles, a reasonable basis test is applied to determine whether any situation exists which justifies the classification. Risjord, supra, at 503. The location limitation in the proposed concurrent resolution appears to have a real and substantial relation to the objectives described above and would therefore probably survive a challenge under the due process clause as well.
In conclusion, amending the constitution of the state of Kansas to allow casino gaming only in locations where parimutuel wagering on horse and dog races is adopted and authorized does not violate article 2, section 17 of the Kansas constitution or the fourteenth amendment to the United States constitution. While you have not inquired about it, we note that the provision tying all future casinos to the county vote on the amendment may raise legal concerns. (See article 15, section 10 for an example of a provision allowing for future elections.)
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm